3-20-0244 People of the State of Illinois Appley v. Jackie Nunn Jr. Appellant Ms. Merriman, you may proceed. Good morning. May it please the Court. My name is Christina Law Merriman from the Office of the State Appellate Defender on behalf of Jackie Nunn Jr. the Appellant. The issue... Sorry, I'm apologizing to a colleague. Go ahead. The issue before the Court today is whether the State proved, beyond a reasonable doubt, that Jackie possessed the drugs found under a car in a public housing parking lot. And, alternatively, whether the State presented sufficient evidence that Jackie intended to sell those drugs. In its brief, the State only argues that Jackie constructively possessed those drugs. Thus, the State concedes that Jackie was not in actual possession. But, even under a constructive possession theory, the State's evidence at trial was insufficient due to major gaps in the State's case. First and foremost, neither of the officers saw Jackie holding drugs. Had either of the officers seen Jackie holding drugs, they would have testified to that. But that was not the evidence at trial. Officer Martin never saw Jackie holding anything. And Officer Latham, who testified that it was dark out and there was diminished visibility when he saw Jackie let go of something near the front bumper of a car. Now, Latham admitted that he did not know what that something was, even testifying that Jackie could have dropped anything from a pair of socks, to a lottery ticket, to a wallet, to even a gun. Without a description of the size, shape, or color of this unknown item, there can be no assurance that the two bags of drugs that were later recovered were the something that Jackie had dropped. In fact, the trial evidence... Was there anything else recovered under the bumper? Nothing else was recovered under the car, but Officer Latham testified that he was only looking for contraband and that there may have been other items under the car. Now, at trial, Latham testified that his testimony suggests that he only saw Jackie holding a single item, as he repeatedly testified that Jackie dropped something or an item. Now, Officer Latham's ability to identify or even just describe this dropped item was critical to the state's burden in this case. A description was critical because Latham testified that he was only looking for contraband and that there may have been other items under the car. Without this description, the state was unable to prove beyond a reasonable doubt that the item... Latham had testified that there was nothing else under the car, then maybe in that case, the state may have been able to meet its burden, but that was not the evidence at this trial. And there was no physical evidence connecting Jackie to the drugs recovered. There was no fingerprint evidence and no DNA evidence to show that Jackie had in fact touched these bags. As a result, it was unreasonable to infer that Jackie dropped the bags of drugs as opposed to any other item that may have been under the car or near the car. Additionally, because the officers lost sight of the parking lot and because Jackie was not in exclusive control of the area where the drugs were recovered, the state was unable to prove that Jackie and not someone else put the drugs there. This wasn't Jackie's home or a secured area where only a certain number of people had access to the area. The drugs were found in a residential parking lot in an area that was accessible to the public and where there was at least one other person, James Williams, in the immediate vicinity moments before the police recovered these drugs. Someone other than Jackie could have put the drugs there before this incident occurred, or somebody else, possibly Williams, could have put the drugs there when the police lost sight of the area. Finally, Jackie's flight from the police also does not prove constructive possession. Mere presence, even when coupled with flight, is insufficient to sustain the state's burden of proof. Here, the trial evidence showed that Jackie may have been running because he didn't want to get arrested for trespassing on Housing Authority property. According to both officers, only residents of the Housing Authority property are permitted on the property. And it's well known that Kankakee police officers can arrest people who are non-residents of the Housing Authority property for trespassing if they've been warned before. In fact, both officers testified that this was precisely why they approached Jackie to begin with. Thus, under these circumstances, the evidence showed that Jackie could have been running for another reason other than the drugs, and thus his flight is not indicative of constructive possession. Proof beyond a reasonable doubt is a heavy burden, and these major gaps in the state's case demonstrate that the state did not meet its burden in this case. For these reasons, we ask this court to reverse Jackie's conviction. Alternatively, we ask this court to reduce Jackie's conviction to simple possession because the state also failed to prove that the drugs that were recovered were intended for distribution and not personal use. In People v. Robinson, the Illinois Supreme Court laid out seven factors that may be probative to a defendant's intent to deliver. One of those factors was whether the quantity of drugs was too large for personal consumption. Here, Jackie was convicted of possessing 1.3 grams of cocaine. Notably, the state presented no evidence that 1.3 grams of cocaine was an amount too large for personal use. The prosecutor did not ask any of the witnesses about personal consumption or whether 1.3 grams of cocaine was an amount indicative of drug dealing. As a result, the amount in this case is not probative of an intent to deliver. The Robinson court also explained that when the quantity of drugs decreases, the need for additional evidence of a defendant's intent to deliver increases. Accordingly, in People v. Ellison, the First District found that when a defendant is in possession of an amount of drugs that is consistent with personal use, like is the case here, the minimum evidence that a reviewing court needs to affirm a conviction for possession with intent is that the drugs are packaged for sale, and at least one other factor that goes to show a defendant's intent to deliver. But in Jackie's case, the state did not present any evidence about the significance of the packaging of the drugs. Now, typically at trials for possession with intent to deliver, the state will ask a police officer or other qualified individual about the significance of the packaging of the drugs recovered. But the state did not do that here. Even though Officer Latham testified that he had participated in numerous narcotics investigations and even went into detail about his training, the state failed to ask Latham or any other witness about the packaging of the drugs recovered. The state carries the burden at trial, and here the state failed to meet that burden in part because they presented no evidence about the significance, if any, of the packaging. Another Robinson factor is the possession of large amounts of cash. Here, while Jackie did have about $700 in cash on him when he was arrested, the state again presented no evidence about where this cash came from. The officers did not observe any hand-to-hand transactions. There was no testimony that this was an area known for drug dealing, nor was there a tip that someone had seen a drug transaction. There was no evidence of the street value of the drugs recovered, and there was no evidence about the denomination of bills that Jackie had. We don't know if Jackie had a small number of large bills, like seven $100 bills, or if he had all 10s and 20s, which may have been more indicative of drug dealing. There simply was no evidence about where this cash came from. As a result, it's unreasonable to infer that this money came from drug dealing, as opposed to a paycheck or really any other legal source of income. Furthermore, another Robinson factor is the possession of a cell phone. Now, Jackie did have a cell phone on him when he was arrested, but given the increased popularity of cell phones since Robinson was decided in the 1990s, the fact that Jackie had a single cell phone on him is in no way probative of his intent to deliver drugs. The other Robinson factors similarly do not support a finding of intent. There was no evidence that the drugs were of a high purity as to support that the drugs were going to be cut for sale. Jackie was not in possession of any weapons, nor was he in possession of any drug dealing paraphernalia, like a scale or additional packaging. Simply put, the state failed to present the necessary evidence to support this conviction. Because the state really presented no evidence regarding the intent to deliver, even in the light most favorable to the prosecution, the state's evidence was insufficient. Therefore, we alternatively ask this court to reduce Jackie's conviction to simple possession. I'm happy to answer any of the court's questions at this time. Any questions? I do, Justice. Ms. Merriman, the photograph which was taken, what is that? The State's Exhibit 3 is the photograph that Officer Latham took of the drugs that he later recovered. He testified he took the photo before he picked them up, and it shows that there's two bags of drugs in plastic bags. One seems to be on the curb, and one seems to be kind of under the bumper of the car, and they're about two feet apart. Does it show anything else? You spent some time arguing that it could have been something else. Justice Holder's question was relevant to that also. We have a photo. We have the best evidence we can. Does it show anything else that might have been plausible to be true, Dominique? It shows, you know, plants and leaves and items such as that in the photo. But the testimony, that question was asked at trial, and Officer Latham testified that the photo doesn't – and we all can see that the photo doesn't depict what's actually under the car because of the angle of the photo. We don't – can't see – we can kind of only see what's in front of that bumper and on top of that sidewalk, but we can't actually see what's under the car, especially because it's dark out. This incident occurred after dark, so we don't know what's under the car. Sure. I apologize. I don't have it in front of me. I've been trying to get a copy to come up on my computer, but I wasn't able to. So, you would agree that the photo was admitted, that it was viewed by the jury, but that it doesn't really tell the full story because of the nature of the quality of the photo. At the angle of the photograph, and this was all that was presented to the jury. Thank you. Any other questions? If not, thank you, Ms. Merriman. Ms. Raymond, you may proceed. May it please the Court, Your Honors, Counsel. My name is Stephanie Raymond. I represent the State of Illinois in this matter. The defendant talks much about what Officer Latham did not see as in the description of the item, but let's talk about what he did see. As Officer Latham and the other officer riding with him pulled up to this – to these apartments, he noticed Defendant and James Williams, Jr. right away, as he had had previous encounters with both. He got out of the car. As he was getting out of the car, Defendant began to distance himself from the officers, walked in front of their vehicle at a fast pace, and when Officer Latham was fully out of his car, Defendant began to run. As Defendant was running, Latham was behind him and observed Defendant. As he was running around this car that is in the photograph, and as he was rounding the car, he dropped his shoulder in a dropping motion, and Officer Latham did see something come from Defendant's hand. Now, he was not able to describe that, but that description is of no matter when we are discussing constructive possession and not actual possession. The defendant is correct. Had they seen, you know, the description of the item, that would have been in their testimony. However, we are under a theory of constructive possession at this point. So, the fact that there's no specific exact description is not fatal to constructive possession. When the officer – Does it matter, though, that there is an opportunity that somebody else could have put something under that car? I guess you've answered one question, why they charged, or why are you in constructive as opposed to, you know, actual. But since both officers leave that area and don't see everything that transpired, does that affect the constructive possession? And that, you know, the fact that somebody else could have thrown something there? The fact that others had access to the area is also not fatal, considering all the other circumstances that surround constructive possession of defendant in this case. The officers were out of sight of that specific area for a time. However, both officers testified that amount of time was less than a minute and one. Latham testified that it was approximately 20 seconds from the time that they – from the time that he, Latham, observed Defendant make a dropping motion and then that he was back in the area. At that time, James Williams Jr. was in the area, and the other officer, Officer Martin, testified that he observed James Williams Jr. coming towards them as they were running after Defendant. So there was a time where there was – the officers did not have their eyes on that very car in that very area. However, when they came back, the officer searched that particular area. It's not as if he searched the entire parking lot. He searched where he observed Defendant make that motion, and that is where he found the contraband. It is the relationship with the contraband that Defendant has, and the relationship can be shown by Defendant's attempt to secrete the contraband. In this case, Defendant's attempt to secrete the contraband would be him attempting to throw the drugs under the car, which is a reasonable inference based on the photograph that the people showed to the jury. There was no DNA evidence, as Defendant points out. However, that's not required. What's the reasonable inference that he made this furtive movement of a drop and there was something found thereafter? The reasonable inference was that he's the one who dropped those drugs in that exact spot. He's the one who was seen making the motion. He's the one who the officer observed something falling from his hands. It is not a reasonable inference to say that he would be dropping something that's like socks or a lottery ticket or a stick or rock. It's not a reasonable inference to say that he would he would be dropping something illegal or illegal as he's running from the police. All those items are illegal to possess. So the reasonable inference would be that he dropped the drugs as he was running. Now, his flight is consciousness of guilt and has been. That's that's one of the things that just one of the things. It's not the only thing. So his his exclusive control or not of this area is is not fatal because when considering all the other factors, his flight from the area, the fact that he dropped his shoulder and the officer saw something fall to the ground as he's running. That all. That is what shows the constructive possession is the other individual that he was with. You say he was he ran in the direction. He was like, like, sort of following the this little entourage or he was right. Or was he running the other way? No, he was right. He actually walking, not running. He did not run. Officers did not testify. He ran. He was seen just walking toward where they were trying to arrest defendant. Or well, while they were while they were chasing him and then eventually arrested him in that area and brought him back to be placed in a police car. Mr. Raymond, I hate to throw a fork in the road here, but why isn't this not possession, direct possession? They saw him throw something. They identified that something shortly after he dropped it. So they saw something that they couldn't identify. But shortly after that, identified it as as drugs. Why is that not just actual possession as opposed to complicate this with scenarios of constructive possession, which don't quite fit in my opinion? So it's not actual possession because the officer did not actually see a bag of drugs in defendant's hand. Had that been the case, we would not we would not be going under constructive possession. The officer to say that he I mean, that would not be. He can't he cannot say that he saw a bag of drugs in defendant's hand. And so the state believes that that's why we are going under construction theory, because without him saying I saw being able to testify to the fact that I saw a, you know, a bag of what appeared to be drugs in this person's hand and this person then dropped it. That is why we are not going under actual possession. So, and there there is no way to know why, as I said in my brief, a way to know what was in defendant's mind as he was he was running. The officers have said that they can arrest people for being an area, but that doesn't mean that they are going to or that they do every time there was no testimony to that. So it's the state's position that we did. There was enough evidence to prove defendant possess these drugs beyond a reasonable doubt regarding defendants second argument with the intent to deliver. There are seven factors that the court looks at, as she highlighted, and regarding the first factor too large for personal consumption. The forensic scientists did testify that there. As to the packaging how there were two, there was one big bag with two with two bags, each containing 17 little smaller bags and 31 smaller bags that packaging is consistent with sale of intent to deliver, which is another factor. The state believes that the that packaging is consistent and is shows that defendant intended to deliver purity the drugs coolest testified to the fact that the drugs were not pure which actually demonstrates that they were ready for sale purity. If the substance was pure as defendant correctly points out, it would be that they would need to then be cut in some form or fashion to be sold on the street. However, these were already not pure substance. So it's the state's position that that supports intent to deliver. When regarding weapons there were no weapons found as direct as defendant correctly points out large amounts of cash, there was there was $746 on defendants person. Cell phone. He did have a cell phone, although those are very widely used now paraphernalia there were Latham testify that there was no paraphernalia on defendants person that would be used to consume a substance. Cocaine, which is ingested through things like pipes, and the other items that Latham testified to none of those items were found on defendants person. And then as I previously said the packaging was for individual sale of this of this of these drugs. So it's the state's position that this, the factors do support intent to deliver. Latham did testify to his experience regarding previous narcotic sales, the fact that he was familiar with the paraphernalia. He had made sales in the past using confidential informants and police officers. And the denomination whether or not they were 10s 20s ones is people can buy things in any denomination, it could have been 10s 20s, people can buy things with $1 bills that's really of no matter. Because it was seven $100 bills and 50 or something, but that is different than being a bunch of 10s 20s fives ones. But, I mean, I don't know what the, I think there was testimony about what. Well, or what maybe not about what each bag would cost. I mean is that isn't that usually why the bigger or smaller denominations indicate a, you know, a bunch of separate transactions or something. Correct. But there, there was no testimony regarding what the exact denomination of that $746 was at this in the record. So it's, it's the state's position that the factors actually do support intent to deliver as opposed to not as several factors when taking together as they should be, rather than in isolation. They support an intent to deliver. So the state would just ask that you affirm defendants conviction and sentence. Are there any other questions. Any questions. No. No other questions. Thank you, Mr Raymond. There's a lot of Merriman for rebuttal. Just briefly, I'd like to start with intent since that's where the state left off. I first want to note that there was no testimony about the value, the street value of the drugs recovered. And again, there was no evidence as to where the money that Jackie had on him came from. Again, this was not a case where the officers had been surveilling the area or had seen any hand to hand transactions so there's not even any circumstantial evidence that any drug sales has taken place nor did the officers even allege any of that they in fact conceded that the reason they approached Jackie was because they thought he didn't live on housing authority property. Now, the state argues that there was evidence of the packaging and in fact the drugs were admitted as physical exhibits at this trial and so there certainly was, you know, that was in evidence, but what's important was that there was no testimony and no evidence about the significance of the packaging. And in, in cases for possession with intent to deliver typically officers are qualified as experts officers who are familiar with narcotic sales testify that the drugs are packaged in a manner that they have seen is consistent with drug sales. And as the state pointed out, Officer Latham may have been that officer and may have been qualified to testify to that, but the state did not ask any questions about the significance of the packaging and in this case and it's the state's burden to prove that. So without the jury didn't have any evidence about what that packaging meant. And thus, it is unreasonable to infer that the drugs are in a manner of package for sale, as opposed to a manner in which the drugs were purchased for someone who's using those drugs. Additionally, the fact that Jackie didn't have any drug paraphernalia for use on him. Officer Latham testified that that wasn't really significant because users don't always carry around pipes or any other items they might not, they might use to actually use the drugs. Additionally, in people versus Thomas the case I did in our opening brief. Very simply is that we have Officer Latham drug paraphernalia, but was never asked the question as to any significance as to the packaging. Exactly. And he also was not asked any questions about the significance of the amount and whether that was consistent with personal you have against the amount significance of the packaging, but, but the prosecutor went and asked questions about the presence or absence of drug paraphernalia. Correct. Those are the only questions kind of based on spirit. One could assume as he's a qualified person, but he just was never asked the questions as to those other two factors. Yes, and again it's the state's burden to do that and that's in fact what happens in, in many of these cases. In fact in in Pittman a case cited by the state. That's precisely what the officer did in that case and the court affirmed in that case because there was testimony about both the packaging and the amount, and actually in that case also the street value of the drugs recovered, but simply the state's evidence was just insufficient in this case despite even having the opportunity, and possibly the correct witness to meet its burden, because it failed to do so it didn't meet its burden in this case. I'd like to go back to possession, with my remaining amount of time. The fact that the officers lost sight of the parking lot is incredibly significant despite the state's assertion. We have no idea what happened in that parking lot while the officers were gone. They both testified that they were focused on Jackie, and they had no idea what Williams was was doing while they were gone. It was actually about 35 seconds that we film was out of the area. We have no idea what happened during that time it's also possible that the drugs were placed there even before any of this occurred was Williams apprehended. So Williams was later walked over to the area, but significantly, the police did not well, they did not arrest him they did not search him, and they did not question him. So really, the answer was simply no. No, there, but there was some sort of contact, although no no apprehension. Additionally, there's no actual possession in this case. Because as the state said, we have no idea what that something was that officer Latham saw that Jackie drop. Now, had officer Latham testified that he saw Jackie with a clear plastic bag in his hand, or even just a small white object. Maybe we'd be in a different scenario, but because officer Latham did not see Jackie could not describe what Jackie was holding the state's evidence was insufficient of possession as well. I see that my time is up for all the reasons stated today and in our brief we asked this court to reverse Jackie's conviction. Thank you. Thank you both for your arguments here today this matter will be taken under advisement and the written decision will be issued to you as soon as possible. And with that, we will have another case but thank you, and in recess. Thanks a lot. Thank you.